IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES E. GRIFFIN,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    CIVIL ACTION NO. 2:04-CV-641-MEF
                                     )                [WO]
                                     )
MARSHALL WILLIAMS, JR., *et al.,*    )
                                     )
            Defendants.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

James E. Griffin ["Griffin"], a former inmate, initiated this 42 U.S.C. § 1983 complaint against Marshall Williams, Jr., the sheriff of Barbour County, Alabama, and Jean Hartzog, George Parham, Arlene Grinsley, and Evelyn Person, all correctional officers at the Barbour County Jail. Griffin contends that from March 29, 2004 until June 13, 2004 during his confinement in the Barbour County Jail the defendants denied him adequate medical treatment for a neck injury suffered in a February 10, 2003 automobile accident. Griffin seeks monetary damages from the defendants.

The defendants filed a special report and supporting evidentiary materials addressing Griffin's claim for relief. Pursuant to an order entered herein, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of August 25, 2004 - Court Doc. No. 11.* Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support

thereof and the response filed by Griffin in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  FACTS

On March 29, 2004, Griffin entered the Barbour County Jail on a probation violation. At this time, Griffin had no medication in his possession.  On March 30, 2004, Griffin submitted a grievance to the attention of defendant Hartzog in which he addressed  a previous request for legal materials.  *Defendants' Exhibit 3* at 1-2.  In the post-script to this grievance, Griffin wrote "[a]s you know my neck was broken and I am out of pain pills, which are Lorcets."  *Id*. at 2.  Due to Griffin's reference to a possible need for medical treatment, defendant Hartzog referred this grievance to the jail's health care personnel for review.

On April 1, 2004, nurse Johna Cotton evaluated Griffin at which time Griffin advised her that he suffered a broken neck in February of 2003.  *Defendants' Exhibit 19 - Medical Treatment Record of James Griffin*; *Defendants' Attachment 1 - Affidavit of Johna Cotton* at 2.  During this evaluation, Griffin also requested a prescription for Lortab.[1]  *Id*.  The following day, nurse Cotton consulted with the jail's physician, Dr. John Jackson, with respect to Griffin's request for Lortab.  Nurse Cotton then attempted to identify the physician who initially prescribed Lortab and/or the pharmacy which had previously filled Griffin's

---

[1]The Medical Desk Reference states that Lortab is a combination of a narcotic (hydrocodone) and a non-narcotic (acetaminophen) which is used as a pain reliever.  Lorcet is the same medication only sold under a different brand name.

2

prescription for this narcotic. *Id*. Griffin could not provide this information. Consequently, Dr. Jackson prescribed Flextra-650 in response to Griffin's complaint of pain.[2] *Id*. Jail personnel filled this prescription at the Clayton Drug Company on April 13, 2004, *Defendants' Exhibit 31 - Insurance Statement for James Griffin*, and administered this medication in accordance with Dr. Jackson's orders. *Defendant's Attachment 1 - Affidavit of Johna Cotton* at 2; *Defendants' Exhibit 24 and 30 - Monthly Medication Sheets*. However, on several occasions, Griffin refused this medication. *Id*.

On April 9, 2004, Griffin submitted a grievance to defendant Hartzog concerning "medical neglect" in which Griffin advised that he had "been in the Barbour County Jail for approximately two weeks without the proper medication for pain due to a injury of my neck which has been broken." *Defendants' Exhibit 20* at 1. Specifically, Griffin complained that despite his repeated requests for the exact medication prescribed by his free-world specialist, Lortab/Lorcet, he had not been provided this medication. *Id*. at 2. During a consultation with Griffin on April 13, 2004, nurse Cotton explained to Griffin that she could not provide him with a narcotic pain reliever such as Lortab and advised him that she had obtained a prescription for Flextra-650, a non-narcotic, for his complaint of pain. *Defendants' Exhibit 19 - Medical Treatment Record of James Griffin*. Nurse Cotton also "encouraged" Griffin to discontinue "[weight]lifting or any sports - [no] basketball, sleep [with] pillow under legs or knees." *Id*.

---

[2]Flextra (the brand name for acetaminophen/phenyltoloxamine) is a non-narcotic pain reliever.

On April 25, 2004, Griffin complained to jail personnel that he had fallen in the jail and re-broken his neck. Jail personnel called an ambulance and the ambulance transported Griffin to Lakeview Community Hospital for examination. *Defendants' Exhibit 25*. The attending physician, Dr. Uyamadu, subjected Griffin to a battery of tests which revealed no injuries to Griffin. *Defendants' Exhibit 25*; *Defendants' Attachment 1 - Affidavit of George Parham* at 3. In light of the foregoing, Dr. Uyamadu discharged Griffin with only a prescription for Indocin (indomethacin).[3] *Defendants' Exhibit 25* at 4.

On April 29, 2004, Griffin again filed a grievance addressed to defendant Hartzog in which complained that jail personnel had refused to provide him with "necessary medication" which he identified as "Lorcet 7.5 mg . . ." *Defendants' Exhibit 26*. Medical personnel continued to offer Griffin Flextra, the medication prescribed by Dr. Jackson, for treatment of his pain.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Griffin is required to produce some evidence which would be admissible at trial supporting his constitutional claims. *See* Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "A mere

---

[3]Indocin is a non-steroidal, anti-inflammatory similar to ibuprofen and naproxen which is used as a mild pain reliever

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving part, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where all the evidence before the court which is admissible on its face or which can be reduced to admissible form

indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to any material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Griffin has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION

To prevail on a claim concerning alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth

6

Amendment."). When seeking relief based on deliberate indifference of correctional officials, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the prison official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth

> amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary judgment on his claim of deliberate indifference, Griffin is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.

8

1995).

Griffin asserts that the defendants failed to provide adequate medical treatment for his neck injury during his confinement in the Barbour County Jail from March 29, 2004 until June 13, 2004.  In addressing this claim, the defendants maintain that Griffin received continuous and unimpeded medical care from the jail's health care professionals.  As support for this assertion, the defendants submit the affidavit of nurse Johna Cotton in which she details the treatment provided to Griffin as follows:

> It is the policy of the Barbour County Sheriff's Department that persons incarcerated in the Barbour County Jail be allowed to receive prescription medication from their personal physicians.  This medication may be brought to the jail by the inmate, or by a member of the inmates' family.  After obtaining such medication, it is distributed to the inmate only after I, with the inmate's permission, have verified the validity of the prescription with the prescribing physician.  Though given the opportunity to do so, and though he had daily access to a telephone, James Griffin neither brought, nor caused anyone to bring, any type of medication to the Barbour County Jail which had been prescribed for him.  In fact, though continually requesting the drug Lortab, and stating that his doctor had prescribed it for him, the Plaintiff was unable to tell me anything about his prescription, including the pharmacy where it was obtained, or the name of the prescribing physician.    T h e Plaintiff's first request for medical care came on March 30, 2004, the day following his incarceration, and was passed on to me by members of the jail staff.  On the following day, April 1, 2004, I saw the Plaintiff, noting that he had sustained a neck injury in February, [2003].  On the next day, April 2, 2004, following directions of the jail's attending physician, Dr. John Jackson, I attempted, but was unable to confirm, that Lortab had ever been prescribed for Mr. Griffin.  The jail physician does not, routinely, dispense narcotic medications to inmates if a suitable alternative is available.  This situation was explained to Mr. Griffin, and an alternative was offered, which he refused.
> On April 13, 2004, during his visit with me, even though Mr. Griffin had complained of having no problems other than "a rash," the Plaintiff once again requested Lorcet for "low back pain."  In my patient notes of that date, I stated

"I have explained to patient that I cannot give him Lortab.  We have called Flextra TID for his lower back pain."  I encouraged Mr. Griffin to refrain from physical activity which aggravated his back, and to sleep with a pillow under his legs in order to alleviate his problem.  At no time during this visit with me did Mr. Griffin complain, in any way, about problems with his neck.  It was apparent to me that the Plaintiff's primary purpose was to obtain a narcotic, rather than any other medication.  The medication Flextra was prescribed for the Plaintiff's "low back pain" and was obtained from Clayton Pharmacy.

In response to the Plaintiff's April 28, 2004 medical request (in which Plaintiff suggested he had a cold or the flu), I saw him on that same day.  After examining the Plaintiff, I treated his cold with medication.

At the time of my first contact with Dr. Jackson regarding James Griffin, I made him aware of the Plaintiff's condition and the medication Flextra was prescribed for him.  The Plaintiff began receiving this medication during April of 2004, and continued to do so until May 14, 2004, when he refused, except on four occasions, to take the medication. . . .

*Defendants' Attachment 1 - Affidavit of Johna Cotton* at 2-3.

The undisputed facts of this case establish that medical personnel prescribed Flextra-650 in response to Griffin's request for medication to treat pain associated with his neck injury.  The evidentiary materials further demonstrate that medical personnel routinely examined Griffin and prescribed other various medications in accordance with their evaluations of his complaints.  The record also demonstrates that although Griffin would, on occasion, refuse his medication health care personnel attempted to dispense the medication in accordance with the prescriptions provided to Griffin.  Additionally, the evidentiary materials demonstrate that jail personnel transported Griffin to a free-world hospital on April 25, 2004 for treatment when he complained that he had re-injured his neck in a fall at the jail.

It is clear from the pleadings filed in this case that the named defendants are not health

10

care professionals and serve as defendants with respect to this complaint solely due to their supervisory positions at the Barbour County Jail.  "There is 'no *respondeat superior* liability for a § 1983 claim.'  *Marsh [v. Butler County, Alabama*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*)].  Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights.  *Id.* at 1059."  *Salas v. Tillman*, 162 Fed.Appx. 918, 922 (11th Cir. 2006).

Griffin has presented no evidence sufficient to create a genuine issue of disputed fact with respect to his deliberate indifference claim against the named defendants.  The defendants allowed Griffin access to health care professionals.  There is nothing before the court which indicates that the defendants personally participated in or had any direct involvement with the medical treatment provided to Griffin.  Additionally, it is undisputed that medical personnel made all decisions relative to the course of treatment provided to Griffin and that such treatment did not result from a policy instituted by the defendants.  The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff, to substitute their lay opinion for that of a medical professional or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.

An assessment of the record before this court reveals no evidence that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial

11

risk of harm existed to Griffin by failing to prescribe the requested narcotic, that the defendants actually drew this inference and thereafter ignored the risk.  Griffin has therefore failed to establish the requisite element of subjective awareness on the part of the defendants. *Carter*, 352 F.3d at 1350.

Furthermore, this court has conducted a thorough and exhaustive review of all the evidentiary materials submitted by the parties in this case.  After such review, the court concludes that the course of treatment undertaken by medical personnel at the Barbour County Jail was neither grossly incompetent nor inadequate.  There is nothing in these materials which indicates that the defendants disregarded any risk of harm to Griffin's medical needs.  Griffin has merely alleged his dissatisfaction with the medical treatment he received.  Specifically, Griffin bases the instant complaint on the refusal of medical personnel to provide him with the narcotic of his choice as treatment for his complaints of pain.  This "'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545; *Waldrop*, 871 F.2d at 1033 (the mere fact that inmate desired a different course of treatment, does not amount to deliberate indifference).  Consequently, summary judgment is due to be granted in favor of the defendants.

**IV.  CONCLUSION**

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before May 24, 2006 the parties may file objections to the Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

Done this    12th day of May, 2006.


                                   **/s/ Delores R. Boyd**
                                   DELORES R. BOYD
                                   UNITED STATES MAGISTRATE JUDGE

14